

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
11/04/2010

| IN RE: | § | |
|---|---|---|
| ALLEN AND GLORIA LYONS, | § | CASE NO: 02-40161-H4-7 |
|    Debtors | § | |

**MEMORANDUM OPINION ON TRUSTEE'S APPLICATION
TO (A) EMPLOY SPECIAL COUNSEL *NUNC PRO TUNC*;
(B) COMPROMISE A CONTROVERSY PURSUANT TO FRBP
9019; AND (C) TO PAY CONTINGENCY FEE AND EXPENSES**
[Docket No. 85]

### I. INTRODUCTION

On July 26, 2010, Randy Williams, the Chapter 7 Trustee (the Trustee), filed his Application to (a) Employ Special Counsel *Nunc Pro Tunc*; (b) Compromise a Controversy Pursuant to FRBP 9019; and (c) to Pay Contingency Fee and Expenses (the Application). [Docket No. 85]. The Court has reviewed the Application, and for the reasons set forth below, finds that the Application should be denied in part. Specifically, the Court will not approve the employment of special counsel *nunc pro tunc*, and, accordingly, the Trustee is not authorized to pay proposed special counsel's requested contingency fee and expenses. The Court will hold a separate hearing to determine whether to approve the compromise pursuant to Federal Rule of Bankruptcy Procedure 9019.[1]

The Court now makes findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule 7052. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent any conclusion of law is construed as a finding of fact, it is also adopted as such. This Court reserves the right to make additional findings and conclusions as it deems appropriate or as any party may request.

---

[1] Unless otherwise noted, all section references refer to 11 U.S.C. and all references to the "Code" or the "Bankruptcy Code" refer to the United States Bankruptcy Code. References to a "Rule" or "Bankruptcy Rule" refer to the Federal Rules of Bankruptcy Procedure.

## II. FINDINGS OF FACT

1. On September 3, 2002, Allen and Gloria Lyons (the Debtors) filed a voluntary Chapter 13 petition. [Docket No. 1].

2. Within Schedule B attached to the bankruptcy petition, the Debtors disclosed "several pending asbestos claims in litigation" as personal property valued at $2,500.00. [Docket No. 1, p. 8]. The Debtors did not claim these causes of action as exempt under Schedule C. [Docket No. 1, p. 10–11].

3. On March 4, 2004, the Court entered an order confirming the Debtors' Chapter 13 plan. [Docket No. 39].

4. On November 30, 2007, the Chapter 13 Trustee filed a Motion to Dismiss the Debtors' Chapter 13 Case. [Docket No. 48]. In his Motion to Dismiss, the Chapter 13 Trustee asserted that the Debtors were delinquent in the amount of $137,124.00. [Docket No. 48].

5. The Chapter 13 Trustee filed a Second Amended Motion to Dismiss on December 3, 2007. [Docket No. 51]. Because the Debtors' case had then surpassed 60 months in duration, the Trustee asserted that their case should also be dismissed for exceeding the limits imposed upon the duration of a plan pursuant to Section 1322(d). [Docket No. 51].

6. On January 3, 2008, the Debtors filed a Notice of Voluntary Conversion from a Chapter 13 case to a Chapter 7 case. [Docket No. 54].

7. On January 29, 2008, in their converted Chapter 7 case, the Debtors once against disclosed the pending asbestos claims in Schedule B as personal property valued at $2,500.00 [Docket No. 61, p. 7], and they did not claim the causes of action as exempt under Schedule C [Docket No. 61, p. 9–10].

8. On February 1, 2008, Randy W. Williams was appointed as the Chapter 7 Trustee.

9. On April 28, 2008, the Court entered an order granting the Debtors a discharge pursuant to Section 727. [Docket No. 75].

10. On May 6, 2008, the Trustee commenced an adversary proceeding on May 6, 2008 against Texas Workforce Commission, Texas Comptroller of Public Accounts, Internal Revenue Service, Southwestern Bell Yellow Pages, Inc., and Galveston County Taxing Authorities (Adv. No. 08-03157), seeking a declaratory judgment regarding the validity, priority, or extent of the parties' liens or other interest in the Debtors' property. [Docket No. 77]. The adversary proceeding was closed on March 12, 2009, after the parties reached a settlement and an agreed order was signed by the Court. [Adv. No. 08-03157, Adv. Doc. No. 33].

11. The Trustee filed his Final Report on May 14, 2010, representing that "[a]ll scheduled and known assets of the estate have been reduced to cash, released to the debtor(s) as exempt property pursuant to 11 U.S.C. § 522, or have been or will be abandoned pursuant to 11 U.S.C. § 554." [Docket No. 81, p. 1]. Although the Trustee filed his Final Report, this Chapter 7 case has never been closed.

12. On July 26, 2010, several months after filing his Final Report, the Trustee filed the Application. [Docket No. 85]. The Trustee acknowledges that he neither pursued the pending asbestos claims disclosed in the Debtors' schedules nor abandoned the asset. He asserted that he "did not believe those claims had sufficient value to warrant active pursuit." [Docket No. 85, p. 1]. However, when he received notice on July 21, 2010 from the law firm of Baron & Budd that it had negotiated settlement of the Debtors' asbestosis claims for $9,656.29 [Docket No. 85, p. 1–2], the Trustee filed the Application

3

requesting that the Court authorize the employment of proposed special counsel on a *nunc pro tunc* basis, allow the compromise negotiated by special counsel, and approve payment to proposed special counsel in accordance with their representation agreement with the Debtors. [Docket No. 85, p. 2 & 4].[2] The Trustee asserts that Baron & Budd's rates are "within the usual and customary rates charged by attorneys for work of this kind" and that their "employment on the terms and conditions set forth herein will be in the best interests of the Estate." [Docket No. 85 p. 2–3].

### III. CONCLUSIONS OF LAW

**A. Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther* (*In re Ginther Trusts*), Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper

---

[2] In conjunction with his request to employ Baron & Budd, the Trustee expressly alleges that "[e]mployment of Proposed Special Counsel was not previously sought because the Trustee did not believe it economically prudent to pursue the asbestosis claims. However, as a result of Proposed Special Counsel's efforts, the estate stands to recover approximately $9,656.29. Employment on a *nunc pro tunc* basis is required because more than thirty (30) days have passed since Proposed Special Counsel began work on the matter. Further, as a final decree [*i.e.* a final order closing the Chapter 7 case] has not been entered and the claims [have] not [been] abandoned, employment on a *nunc pro tunc* basis will not prejudice the rights of any party in interest." [Docket No. 85, p. 2, ¶ 4].
 The Trustee also attached to the Application the representation agreement between the Debtors and Silber • Pearlman, P.C.—which is a firm that merged with Baron & Budd in 2008. [Docket No. 85, p. 2 & 6]. The agreement, signed on November 24, 1997, provided for payment of a 40% contingency fee, plus expenses. [Docket No. 85, p. 6].

pursuant to 28 U.S.C. § 1408(1).

**B. The Court will not authorize the employment of Baron & Budd as special counsel.**

1) <u>There are no representations or allegations in the Application that would convince this Court that the employment of Baron & Budd is in the best interest of the estate</u>.

When considering whether to grant an application to employ a professional *nunc pro tunc*, a bankruptcy court must first determine whether it would have granted the application pursuant to the applicable provisions of the Bankruptcy Code if the application was otherwise timely filed. *E.g. In re Rivera*, No. 01-40461, 2002 Bankr. LEXIS 975, at *4 (Bankr. E.D. Tex. Aug. 21, 2002); *In re Ark. Co.*, 798 F.2d 645, 650 (3rd Cir. 1986) ("When considering an application, the bankruptcy court may grant retroactive approval only if it finds . . . that it would have granted prior approval, which entails a determination that the applicant satisfied the statutory requirements."). Section 327(e) provides that:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

The Fifth Circuit has observed that the standards set forth in Section 327 demand strict compliance. *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005). The applicant seeking to employ special counsel has the burden of proving that employment is proper. *In re Silver Lion, Inc.*, No. 09-80414, 2010 WL 2735710 (Bankr. S.D. Tex. July 12, 2010); *In re Johnson*, 433 B.R. 626, 635 (Bankr. S.D. Tex. 2010).

The Bankruptcy Code does not specifically define when the employment of proposed special counsel is "in the best interest of the estate," as required by Section 327(e). However, Section 704(a)(1) does expressly delineate that a Chapter 7 trustee has a duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as

5

expeditiously as is compatible with the best interests of parties in interest." Citing this provision, the United States Supreme Court has held that a Chapter 7 trustee has a duty to "maximize the value of the estate" for creditors. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985); *see also Tex. Comptroller of Pub. Accounts v. Liuzza (In re Tex. Pig Stands)*, 610 F.3d 937, 942 (5th Cir. 2010). Accordingly, in order for the Court to find that the employment of proposed special counsel is in the best interest of the estate and parties in interest, the Trustee must demonstrate that this employment will maximize the value retained by the Debtors' estate.

The Trustee states in the Application that Baron & Budd's "employment on the terms and conditions set forth herein will be in the best interests of the Estate." [Finding of Fact No. 12]. Such a conclusory statement is insufficient. Indeed, the Application is devoid of any indication that the Trustee endeavored to procure a more favorable rate from alternate counsel or negotiate a lower rate with Baron & Budd. Given that Baron & Budd has no absolute right to compensation from the Debtors' estate, such action is paramount. Understanding that, absent Court approval, it will be, at best, a general unsecured creditor and potentially be paid only a fraction of the fees it is owed, the firm would seemingly be open to negotiating its fees with the Trustee. While the Trustee did allege that the contingency fee agreement was "within the usual and customary rates charged by attorneys for work of this kind" [Finding of Fact No. 12], the Court is unsure how the Trustee arrived at this conclusion. The Trustee did not indicate in the Application that he had evaluated the firm's rates against other prospective counsel.[3] Under

---

[3] District Judge Nancy Atlas has noted, in the context of evaluating the reasonableness of a contingency fee arrangement procured by proposed special litigation counsel, that disclosure of negotiations between the trustee and prospective counsel is constuctive to the court's analysis. *In re Contractor Tech., Ltd.*, No. Civ. A. H-05-3212, 2006 WL 1492250, at *10 (S.D. Tex. May 30, 2006) ("It would have been helpful for the Trustee to describe thoroughly his efforts to retain other counsel, or any discussions with [proposed special counsel] regarding any non-contingent fee arrangement.").

6

these circumstances, the Court is unable to conclude that retention of Baron & Budd would maximize the value to the estate and therefore be in the best interest of the estate.

    2) <u>Even if the employment of Baron & Budd is in the best interest of the estate, the facts and circumstances present in this case do not warrant approval of the Application *nunc pro tunc*.</u>

Bankruptcy Local Rule 2014-1(b) sets forth certain requirements that must be satisfied when a professional files a *nunc pro tunc* application for the approval of employment. The rule specifically provides that:

> If an application for the approval of the employment of a professional is made more than 30 days after that professional commences provision of services and the application seeks to make the authority retroactive to the commencement, the application must include:
> (A) An explanation of why the application was not filed earlier;
> (B) An explanation why the order authorizing employment is required *nunc pro tunc*;
> (C) An explanation, to the best of the applicant's knowledge, how approval of the application may prejudice any parties-in-interest.

Bankruptcy Local Rule 2014-1(b)(2).

In paragraph four of the Application, the Trustee attempts to address each of these requirements. First, he alleges that "[e]mployment of Proposed Special Counsel was not previously sought because the Trustee did not believe it economically prudent to pursue the asbestosis claims," but notes that his position changed once he realized that the proposed counsel had negotiated a settlement of the claims for $9,656.29. [Finding of Fact No. 12]. Second, he asserts that "[e]mployment on a *nunc pro tunc* basis is required because more than thirty (30) days have passed since Proposed Special Counsel began work on the matter." [Finding of Fact No. 12]. Finally, the Trustee argues that employment of Baron & Budd on a *nunc pro tunc* basis will not prejudice the rights of any party in interest because "a final decree [*i.e.* a final order dismissing the Chapter 7 case] has not been entered and the claims [have] not [been]

7

abandoned." [Finding of Fact No. 12].

The Trustee's explanations are insufficient to warrant this Court's approval of the Application. The Fifth Circuit has held that a bankruptcy court retains "equitable power in the exercise of its sound discretion, under exceptional circumstances . . . [and] upon a proper showing" to grant an application to employ an attorney *nunc pro tunc* "where through oversight the attorney has neglected to obtain . . . prior approval but has continued to perform services for the debtor." *Fanelli v. Hensley (In re Triangle Chems., Inc.)* 697 F.2d 1280, 1289 (5th Cir. 1983).[4] In *Triangle Chemicals*, the debtor's counsel, due to a "misunderstanding of the law," continued to perform substantial services for seven months following the filing of a Chapter 11 petition without obtaining court approval of his appointment as counsel of record for the debtor. *Id.* at 1282. Thus, the "oversight" referenced in *Triangle Chemical* includes situations in which an attorney or other responsible party neglects to timely file an application to employ due to a misunderstanding, rather than a blatant disregard of the procedural requirements. *Id.* at 1290 (noting that "confusion as to the applicable law" is a basis that may allow a bankruptcy court to approve employment of an attorney *nunc pro tunc* and award that attorney compensation); *see also In re Rivera*, 2002 Bankr. LEXIS 975, at *11.

In *Rivera*, the court refused to exercise its discretion to approve employment of special counsel *nunc pro tunc* when counsel failed to ensure that an application to employ was timely filed. 2002 Bankr. LEXIS 975, at *10–11 (noting that the proposed special counsel "may not be a bankruptcy specialist, but he has been admitted to practice in the Courts in this State and in this

---

[4] In *Arkansas Company*, the Third Circuit offered guidelines for bankruptcy courts to apply in determining whether the exceptional circumstances required by *Triangle Chemicals* exist, including the following factors: "whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors." 798 F.2d at 650.

District and will be held accountable for knowing how to acquit himself properly in those Courts in which he represents clients."). Indeed, the Fifth Circuit has emphasized that it does not intend to encourage circumvention of the rules regarding court approval of counsel's employment. *In re Triangle Chems.*, 697 F.2d at 1289 ("[W]e do not intend by our holding to encourage any general non-observance of the contemplated pre-employment court approval."); *see also In re Hydro Servs., Inc.*, 277 B.R. 309, 310–11 (Bankr. E.D. Tex. 2001) (noting that in accordance with the Fifth Circuit's ruling in *Triangle Chemicals*, approval of an application to employ *nunc pro tunc* "should not be granted without regard to the circumstances, facts and equities in the case or with such *carte blanche* as to render the procedural requirements of the Bankruptcy Code and Bankruptcy Rules meaningless formalities").

The importance of strict compliance with the procedural rules regarding counsel's employment and compensation is even more crucial in a Chapter 7 setting. In fact, the Fifth Circuit acknowledged this distinction in an opinion issued subsequent to *Triangle Chemicals*:

> Admittedly, in *Triangle Chemicals* we implicitly distinguished between an attorney's services provided to the debtor-in-possession in aid of the estate and those of an unauthorized attorney provided to a debtor in a Chapter 7 proceeding. . . . We recognize that the debtor in a Chapter 7 proceeding does not have possession or control over the assets of the estate, so the equities involved in awarding attorney's fees in the absence of strict compliance with the Code and Rules are altered. . . . [A]lthough provided for under the Code, an award of fees from the estate for services rendered to the debtor personally inevitably reduces the assets available for distribution to the creditors for whose benefit the estate is held. Under such circumstances, the bankruptcy court has a lesser degree of discretion to award fees but is not completely shackled by a per se prohibition.

*Anderson v. Anderson (In re Anderson)*, 936 F.2d 199, 204–05 (5th Cir. 1991).

No representations have been made to this Court that an application to employ Baron & Budd as special counsel was not timely filed due to oversight, confusion, or misunderstanding of the law. Baron & Budd, through its predecessor, signed a contingency fee agreement with the

Debtors in November of 1997. [Finding of Fact No. 12]. The Debtors disclosed the pending asbestos claims as personal property valued at $2,500.00 when they filed their original Chapter 13 petition in September of 2002. [Finding of Fact No. 2]. Thus, at the time the Debtors filed for bankruptcy, proposed special counsel had been representing them in on-going litigation for almost five years. Nevertheless, the firm did not ensure that an application to employ it as special counsel was filed with this Court. Even after the Debtors voluntarily converted their Chapter 13 case to a Chapter 7 case in January of 2008 and filed a Chapter 7 petition containing the same disclosure regarding the pending asbestos claims [Finding of Fact Nos. 6 & 7], Baron & Budd did not approach the Trustee and request that he file an application with this Court seeking to employ the firm as special counsel.

The Trustee was appointed two days after the Debtors converted their Chapter 13 case to a Chapter 7 case. [Finding of Fact No. 8]. He has openly admitted in the Application that he neither pursued the pending asbestos claims nor abandoned these assets because he did not believe they had enough value to warrant active pursuit. [Finding of Fact No. 12].[5] In fact, the Debtors obtained a discharge of their debts, the Trustee negotiated a settlement with disputed lien holders, and the Trustee filed his final report months before he took any action with regards to the asbestos claims. [Finding of Fact Nos. 9–12]. Over two months after the final report was filed, Baron & Budd notified the Trustee that it had obtained a settlement of the pending claims,

---

[5] The Trustee offers no explanation as to why he did not abandon the claim in 2008 if he believed it had no value. Rather, the Trustee simply took no action, and when he finally concluded two and a half years later that the claim had sufficient value to merit retaining Baron & Budd, the deadline for timely retaining Baron & Budd had long since passed. As soon as practicable, a Chapter 7 trustee should endeavor to employ special counsel to prosecute a debtor's pending cause of action—as a cause of action is property of the estate pursuant to Section 541—or timely abandon the cause of action in accordance with Section 554 to allow the debtor an opportunity to pursue the claim. *See, e.g., Carter v. Schott (In re Carter Paper Co.)*, 220 B.R. 276, 279 (Bankr. M.D. La. 1998) (noting that when a former chapter 7 debtor brought an adversary proceeding against the Chapter 7 trustee for alleged misconduct in failing to prosecute or timely abandon a cause of action, it resulted in the debtor being barred by the statute of limitations from pursuing the claim).

and the Trustee then filed the Application requesting that the Court authorize employment of Baron & Budd as special counsel *nunc pro tunc*. [Finding of Fact No. 12].

The Court will not countenance such knowing disregard for the procedural requirements set forth in the Bankruptcy Code and Rules. Clearly, neither Baron & Budd (and its predecessor) nor the Trustee were under a time constraint that prevented them from properly obtaining approval by this Court to employ the firm as special counsel after either the Debtors' original Chapter 13 filing or their conversion to a Chapter 7. Indeed, Baron & Budd, and its predecessor, represented the Debtors in on-going litigation commencing almost five years prior to the Debtors' Chapter 13 bankruptcy filing and continuing until several months after the final report was entered in the Debtors' converted Chapter 7 case. This is an extensive and excessive delay. The Court also recognizes that granting the Application could allow Baron & Budd to recover its contingency fee as an administrative expense, rather than as a general unsecured claim, which will prejudice unsecured claimants.[6] As discussed in *Anderson* above, this Court should be even more reluctant to allow the Trustee to employ proposed special counsel *nunc pro tunc* given that such employment inevitably acts in contravention of the Trustee's fiduciary duty to maximize the value of the Debtors' estate for creditors. Accordingly, given the facts and circumstances presented in this case, the Court refuses to exercise its equitable power to employ Baron & Budd *nunc pro tunc*. Since Baron & Budd is not employed as special counsel pursuant to Section 327, the Trustee is not authorized to pay the firm its requested contingency fee and expenses.

## IV. CONCLUSION

In sum, the Court holds that the Application should be denied in part. First, the

---

[6] Unsecured claimants will be prejudiced because Baron & Budd will receive the sum of $3,865.35 before any distribution is made to unsecured claimants. If, on the other hand, Baron & Budd's fee is treated as an unsecured claim, then the unsecured claimants will not be prejudiced because Baron & Budd will not be paid in full prior to distribution to unsecured creditors.

11

Application does not contain any allegations that would convince this Court that the employment of Baron & Budd is in the best interest of the estate, as required by Section 327. Second, even if the employment of Baron & Budd is in the best interest of the estate, exceptional circumstances are not present to warrant approval of the Application *nunc pro tunc*. Accordingly, the Court will not approve the employment of Baron & Budd as special counsel relating to the prosecution of the asbestos claims that are the subject of the Application and, as a result, the Trustee is not authorized to pay the firm its requested contingency fee and expenses. The Court will hold a separate hearing to determine whether to approve the compromise pursuant to Rule 9019.

An order consistent with this Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed on this 4th day of November, 2010.

Jeff Bohm
United States Bankruptcy Judge